TIMOTHY J. McILWAIN, ESQ.
*Pro Per*
2020 New Road, Suite A
Linwood, New Jersey 08221
Tel: (877) 375-9599
Fax: (609) 677-1790
AttorneyMcilwain@me.com

# UNITED STATES DISTRICT COURT
## CENTRAL   DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J MCILWAIN<br><br>Plaintiff,<br><br>v.<br><br>JAMES NATHANIEL BROWN A/K/A/ JIM BROWN AND DOES 1-2T5<br><br>Defendants. | No. 19 DMG-SKx<br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT** |

TO T**HE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**

Plaintiff, Timothy J. McIlwain, (hereafter "Plaintiff"), pro per, hereby alleges based upon information and belief, which is based upon Plaintiff's personal knowledge against Defendant James Nathaniel Brown, a/k/a Jim Brown, (hereafter "Defendant," or "Defendant Brown") and Does 1-25, as follows:

## I. INTRODUCTORY STATEMENT

Plaintiff, brings this action against Defendant Brown, to obtain restitution, or alternatively, payment for the fair market value of his services, for benefits the Defendant wrongfully received and retained in June of 2016 , that resulted from Plaintiff's efforts on Defendant's behalf from 2006 to 2010, creating and prosecuting a "right of publicity" theory of liability against video game developer, Electronic Arts, Inc. aka EA Sports. Defendant requested and encouraged Plaintiff to use his best efforts to develop and prosecute the case. Plaintiff filed a complaint on Defendant's behalf in 2008 following Plaintiff's extensive research and investigation.

In 2010 Defendant informed Plaintiff that his services were no longer needed, and he had retained new counsel.  In June of 2016, largely due to Plaintiff's efforts on his behalf, Defendant obtained a settlement in the amount of $600,000.00.

Plaintiff, had throughout the relationship attempted to get Defendant to sign a standard retainer agreement that would give Plaintiff 33 1/3% of any amounts obtained at the resolution of the case, exclusive of out-of-pocket costs engendered from Plaintiff's work. Defendant did not execute any of the retainer agreements, but

nonetheless, requested and encouraged Plaintiff to continue to work on his case, reassuring Plaintiff that they had a good relationship until 2010.

On June 29, 2016, shortly after receiving the settlement, Defendant informed plaintiff that he wasn't going to pay him anything.

## II.   PARTIES

1. Plaintiff is a resident of the United States and the Commonwealth of Kentucky. He is a practicing Attorney, licensed in the states of New Jersey and New York.

2. Defendant Brown is a resident of the United States residing in Los Angeles County, in the State of California.

## III.   JURISDICTION AND VENUE

3. This court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (a), in that a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

5. This court can assert personal jurisdiction over Defendant as Defendant primarily resides within this District, and does a substantial amount of business from within this District.

## IV.   STATEMENT OF FACTS

6. Prior to the events that gave rise to this action, Plaintiff and Defendant,

PLAINTIFF'S SECOND AMENDED COMPLAINT      3.      Case No. 2:18-cv-05275 DMG-SKx

Case 2:18-cv-05275-DMG-SK   Document 48   Filed 09/20/19   Page 4 of 14   Page ID #:528

had a long-standing history.

7.    In 2005, Plaintiff promoted Defendant's charity, "Amer-I-Can" by convincing a well-known football star named Shaun Cody, to promote the charity on his television show called "Super Agent" in order to assist Defendant's charity to obtain funding.

8.    On or about January 25, 2006, at Defendant's request, Plaintiff represented Defendant, and another charity run by the Defendant, in a legal dispute, *Moody v. The American Program, Inc., American Foundation* for *Social Change and Jim Brown, Case No. BC 346225* that had been filed against them in the Superior Court for the County of Los Angeles, California.

9.    Plaintiff had offered to and agreed to handle the dispute on a pro bono basis.

10.    Plaintiff represented Defendant Brown and his charity and brought the matter to a successful resolution.

11.    Due to Plaintiff's outstanding efforts and successful conclusion of the case, Defendant offered to compensate Plaintiff, and requested an itemization of his time and expenses, which Plaintiff provided on April 4, 2007.

12.    Plaintiff provided Defendant with an invoice for 633 hours of his time which resulted in an amount of $230,000.00. Plaintiff, however, reminded Defendant again, that he had undertaken the case on a pro bono basis, and instead Defendant could pay whatever he wanted to pay.

PLAINTIFF'S SECOND AMENDED COMPLAINT     4.     Case No. 2:18-cv-05275 DMG-SKx

13. In lieu of payment of the *Moody* case, Defendant requested Plaintiff investigate if he had a viable cause of action against the National Football League (NFL), and other entities, as his image and likeness were being used by those entities for profit without compensation.

14. In an effort to convince Plaintiff to accept the case, Defendant Brown sent Plaintiff an invitation to his home in Los Angeles to discuss the potential lawsuits.

15. On June 7, 2007, Defendant sent to Plaintiff a copy of the proposed contracts from EA Sports and the Pro Football Hall of Fame, attempting to convince Defendant to allow them to use the Defendant's image in their video games. (See Fax cover sheet and accompanying correspondence from EA Sports and the Pro Football Hall of Fame designated as Exhibits 1A-D attached to this complaint.)

16. After Defendant Brown requested Plaintiff investigate the issues, Plaintiff conducted extensive legal research, and consulted many people whose expertise was useful in determining if there were viable claims, and who would be the best defendants to proceed against.

17. On April 25, 2007 Plaintiff advised the Defendant that in his opinion, there were potentially viable legal claims for the infringement upon Defendant's name and likeness.

18. After creating a theory of liability on this specific claim, Defendant and Plaintiff verbally agreed that Plaintiff should be paid on a contingency basis.

19. On July 31, 2007 Plaintiff sent to Defendant correspondence discussing

the merits of a contingency fee agreement as opposed to an hourly rate. (Exhibit 2).

20. Following his sending the retainer agreement to Defendant, Defendant was carbon copied on correspondence to EA Sports, among others, that Defendant would be pursuing claims against them for unlawful appropriation of his name and image. (See Copy of Correspondence dated July 31, 2007 -Ex 3)

21. Plaintiff and EA Sports engaged in a series of correspondence, all copies of which were sent to Defendant.

22. On or about September 26, 2007, Plaintiff forwarded to Defendant another contingency agreement, with the same terms as the one he had sent earlier on July 31, 2007. Defendant did not execute either agreement, but he also did not inform Plaintiff that he wished him to cease representation on Defendant's behalf. (a copy of the contingency agreement and cover letter is appended to this complaint as Exhibits 4 A &B) the terms of which are incorporated by reference as if more fully set forth herein.)

23. Between September 26, 2007 and April 9, 2008, Plaintiff, acting on behalf of the Defendant, was in constant communication with the Vice-President of EA Sports Jake Schatz, about the possibility of resolving the claims amicably in alternative dispute resolution such as mediation.

24. On April 9, 2008 Plaintiff carbon copied Defendant on a letter to EA Sports, stating that while his client was amenable to mediating the dispute, the parties had such substantial disagreement as to the value of the case, as to render mediation a

futility.

26. In pursuit of bringing the best possible case on behalf of the Defendant, Plaintiff spent the next several months continuing to research the law with the assistance of law clerks.

26. In July 2008, Plaintiff incurred the expense of going to well-known trial attorney Gerry Spence Trial Lawyer's College, at his Thunderhead Ranch in Dubois, Wyoming. Plaintiff constantly worked with focus groups to determine the best presentation to try the Defendant's case in front of a jury.

27. On or around July 30, 2008, within days of completing the trial lawyer's college, Plaintiff drafted and filed the first complaint of its kind, in the Supreme Court for the State of New York, on the theory of wrongful appropriation of an athletes image and depiction, by a video game maker, based upon a theory of the usurpation of Defendant's "right-of-publicity, " derived from California Civil Code (CCR) § 3344 and California Business & Professional Code § 17200 alleging unfair competition as well as other causes of action.

28. The original theory of liability based upon the Brown allegations has led to substantial public debate, as well as several class action lawsuits, trials, appeals, and settlements on behalf of athletes.

29. Over the succeeding two years, Plaintiff and Defendant agreed that Defendant, based on Plaintiff's professional judgment, would pursue the matter in California after deciding that it was a better venue for the case, then the State of New

PLAINTIFF'S SECOND AMENDED COMPLAINT    7.    Case No. 2:18-cv-05275 DMG-SKx

York. (Letter from Plaintiff to Defendant, Exhibit 5).

30. On or about November 12, 2008 Plaintiff provided Defendant with another written letter stating that the EA Sports lawsuit must be paid on a 33 1/3 % contingency basis. This agreement included retaining the services of other attorneys, as necessary, to prosecute the case.

31. All contingency agreements between Plaintiff and Defendant carried with them the risk that there would be no attorney's fees recovered unless there was a successful resolution by trial or settlement.

32. Although Defendant never got around to executing any of the contingency fee contracts, Defendant continued to request and encourage Plaintiff to continue his efforts in the prosecution of the case.

33. Subsequently, Plaintiff brought in additional counsel to assist in prosecuting the Defendant's case. This also required relocating the base of operations and resources from New Jersey to California in conjunction with the beginning his case in California as opposed to New York.

34. On September 17, 2009, acting on Defendant's behalf, Plaintiff retained the services of well-known attorney Gene Shioda to aid in the representation of the Defendant. (Retainer agreement Ex 6. Substitution of attorney Ex 7)

35. In October of 2009 attorneys acting on behalf of EA Sports filed a legal action attempting to recover legal fees for their prosecution of a "SLAPP" suit. (See Correspondence from Davis, Wright & Tremaine, LLP Exhibit 8.)

36. On or about October 20, 2009, acting on Defendant's behalf, Plaintiff obtained the services of Attorney Rex Parris to defend the Defendant against EA Sport's claim for $80,000.00. (Exhibit 9-Letter with fax confirmation).

37. On November 9, 2009 Attorney Parris filed a Substitution of Attorney with the court. (Exhibit 10-bearing the signature of Defendant Brown dated October 22, 2009 approving the substitution.)

38. Also, on November 10, 2009 Attorney Parrish filed objections to the declarations of EA Sport's counsel and successfully got their claim dismissed, to Defendant's benefit. (Exhibits 11 A-D).

39. Following the successful representation of Defendant in the prior action, Plaintiff, and the attorneys he had associated with prepared a complaint to be filed in State Court in December of 2009. (Preliminary draft Complaint Exhibit 12).

40. Before the action could be filed in California, Defendant was solicited by other law firms, who convinced him to drop Plaintiff, and his team, as his legal counsel, despite the time, effort and expertise, Plaintiff had expended in bringing the case to court.

41. Plaintiff was formally advised by Defendant in 2010 that Defendant wished Plaintiff to have no further involvement with his case.

42. Defendant hired several other attorneys in succession, but eventually retained his present law firm, Hagens Berman Sobol Shapiro, (hereafter HBSS), to resolve his case. HBSS used virtually the same complaint, almost verbatim, that

PLAINTIFF'S SECOND AMENDED COMPLAINT    9.    Case No. 2:18-cv-05275 DMG-SKx

Plaintiff had filed in New York on July 30, 2008.

43. In June of 2016 Defendant's case was settled in the amount of $600,000.00.

44. Upon learning of Defendant's recovery, Plaintiff informed Defendant, through his legal counsel HBSS, that he was asserting a lien against the recovery, and requested the sum of $96,000.00 be held in escrow pending resolution of the dispute.

45. On June 29, 2016 Defendant, through his legal counsel, informed Plaintiff that he wasn't going to pay him anything.

## V. Count I Quantum Meruit

46. Paragraphs 1-45 are re-alleged and incorporated by reference as if more fully set forth herein.

47. The Defendant expressly or impliedly requested Plaintiff perform legal services on the Defendant's behalf. (See Paragraphs 6-39).

48. Plaintiff performed the legal services requested by the Defendant.

49. Although Plaintiff performed the legal services at the Defendant's request, that resulted in a successful conclusion for the Defendant, both on the defense of the "SLAPP" litigation and his original case for misappropriation of his image, Defendant has refused, and continues to refuse, to compensate Plaintiff for the services rendered.

50. As a direct result of Plaintiff's efforts on Defendant's behalf, taken at Defendant's specific requests, Defendant has been conferred a benefit in the amount of

$680,000.00.

## VI.    Count II  QUASI-CONTRACT

51. Paragraphs 1-45 are re-alleged and incorporated by reference as if more fully set forth herein.

52. Defendant declared the contingency agreement(s) void pursuant to California Business & Professional Code § 6147 (b) by not executing the contingency agreement and then later discharging him in 2010.

53. Although Plaintiff performed the legal services at the Defendant's request, that resulted in a successful conclusion for the Defendant, Defendant has refused, and continues to refuse, to compensate Plaintiff for the services rendered.

54. As a direct result of Plaintiff's efforts on Defendant's behalf, taken at Defendant's specific requests, Defendant has been conferred a benefit in the amount of $680,000.00 which he improperly retains.

Wherefore, Plaintiff requests the following relief:

**FOR COUNT I OF THE AMENDED COMPLAINT, QUANTUM MERUIT**

1. The fair market value of Plaintiff's services to the Defendant, determined to be at least $96,000.00 exclusive of interest and costs.

2. Statutory Interest pursuant to California Civil Code §§ 3287; 3289 (a).

3. A jury trial on all issues.

4. Such other, further and different relief as to the court appears to be just,

proper and equitable.

## **FOR COUNT II OF THE COMPLAINT, QUASI-CONTRACT**

1. Restitution comprising an attorney's fee for Plaintiff's contribution to the final result of Defendant's recovery to the extent that Defendant was benefited from Plaintiff's efforts.

2. Statutory interest pursuant to California Civil Code §§ 3287; 3289 (a).

3. A jury trial on all issues.

4. Such other, further and different relief as to the court appears to be just, proper and equitable.

Dated this 20th Day of September, 2019


By_____s/Timothy J. McIlwain_____
                Timothy J. McIlwain, Esq,

TIMOTHY J. McILWAIN, ESQ.
*Pro Per*
2020 New Road, Suite A
Linwood, New Jersey 08221
Tel: (877) 375-9599
Fax: (609) 677-1790
AttorneyMcilwain@me.com

# UNITED STATES DISTRICT COURT
# CENTRAL   DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J MCILWAIN<br><br>Plaintiff,<br><br>v.<br><br>JAMES NATHANIEL BROWN A/K/A/ JIM BROWN AND DOES 1-2T5<br><br>Defendants. | No. 2:18-cv-05275 DMG-SKx<br><br>**PLAINTIFF'S CERTIFICATE OF SERVICE** |

I hereby certify that on September 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the email addresses registered and I hereby certified that I have mailed the foregoing document via the U.S. Postal Service to the following a copy of the foregoing Second Amended Complaint was served upon the Court and Defendant, James Nathaniel Brown through his legal counsel, as follows by electronic mail transmission and first class mail, postage pre-paid at their offices:

Dated: September 20, 2019

Leonard Aragon
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
leonard@hbsslaw.com

Hon. Dolly M Gee
U.S. District Court
Central District of California
350 West 1st Street
Los Angles, California 90012

Plaintiff, McIlwain, LLC

By_____s/Timothy J. McIlwain_____
Timothy J. McIlwain, Esq,

PLAINTIFF'S SECOND AMENDED COMPLAINT       14.       Case No. 2:18-cv-05275 DMG-SKx